# EXHIBIT A


### 1884CV03517 Leiva, Julio B vs. Turco, III, Thomas A et al

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Civil Actions with Incarcerated Party | **FILE DATE:** | 11/08/2018 |
| **ACTION CODE:** | PD1 | **CASE TRACK:** | F - Fast Track |
| **DESCRIPTION:** | Equity Action involving an Incarcerated Party | | |
| **CASE DISPOSITION DATE** | | **CASE STATUS:** | Open |
| **CASE DISPOSITION:** | Pending | **STATUS DATE:** | 11/09/2018 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil E |

## PARTIES

**Plaintiff**
Leiva, Julio B
W107572
MCI Cedar Junction
P.O. Box 100
South Walpole, MA 02071

**Attorney**                    PROPER
Pro Se
Massachusetts Bar
Added Date: 11/09/2018

**Defendant**
Burnette, Stephen

**Defendant**
Douglas W DeMoura As Superintendent MCI Cedar Junction

**Defendant**
Foley, Lt.

**Defendant**
Hollomon, Patrice

**Defendant**
Massachusetts Department of Correction

**Defendant**
Steven Silva As Superintendent S.B.C.C.

**Defendant**
Thomas A Turco, III Commissioner of Correction



# COMMONWEALTH OF MASSACHUSETTS
## SUFFOLK COUNTY CIVIL
### Docket Report

## INFORMATIONAL DOCKET ENTRIES

| Date | Ref | Description | Judge |
|------|-----|-------------|-------|
| 11/08/2018 | 2 | Original civil complaint filed. | |
| 11/08/2018 | 3 | Civil action cover sheet filed. | |
| 11/08/2018 | 1 | Affidavit of Indigency and request for waiver substitution of state payment of fees and costs filed without Supplemental affidavit<br>Allowed, subject to review by Judge | |
| 11/08/2018 | 4 | Plaintiff Julio B Leiva's  Motion to<br>Waive Filing Fee and Proceed in Forma Pauperis | |
| 11/08/2018 | 5 | Plaintiff Julio B Leiva's  Motion for alternate service<br>by Regular First Class Mail | |
| 11/09/2018 | | Attorney appearance<br>On this date Pro Se added for Plaintiff Julio B Leiva | |
| 11/09/2018 | | Case assigned to:<br>DCM Track F - Fast Track was added on 11/09/2018 | |
| 11/09/2018 | | Demand for jury trial entered. | |
| 11/13/2018 | 6 | ORDER: To Commissioner of Correction to provide certain information regarding inmate account relative to plaintiff's Motion to waive filing fee and proceed in Forma Pauperis.  By The Court.  Notice Sent 11/13/18<br><br>Judge: Giles, Hon. Linda E | Giles |
| 11/13/2018 | 7 | ORDER: After a review of your petition and correspondence, the Court has instructed the Clerk's Office to take the following action:  Service is to be made upon defendant(s) by means of certified mail at the plaintiff's expense, and you must return to the court the original summons with the green receipt card for each defendant.  By the Court.  Notice Sent 11/13/18<br><br>Judge: Giles, Hon. Linda E | Giles |
| 11/13/2018 | | General correspondence regarding Seven summonses mailed to plaintiff this day | |
| 11/13/2018 | | General correspondence regarding Order P#6 sent to Marlene Cronin, DOC, to fax order to MCI Cedar Junction requesting a canteen account for (6) months. | |
| 12/04/2018 | | General correspondence regarding Copy of entire Original Complaint mailed to Plaintiff 12/4/18 as requested by Pltf. due to loss of property. | |
| 12/14/2018 | | Endorsement on Motion to Waive Filing Fee and Proceed in Forma Pauperis (#4.0): ALLOWED<br>By the Court. Notice sent 12/17/18. | Giles |
| 12/14/2018 | | Endorsement on Motion for alternate service by Regular First Class Mail (#5.0): ALLOWED<br>Plaintiff may serve defendants by First Class Mail. Plaintiff shall provide an affidavit as proof of service pursuant to M.R.C.P. Rule 4. By the Court.<br>Notice sent 12/17/18 | Giles |

| 12/14/2018 | 8 | ORDER: Notice of Waiver of Court costs and request for payment to be withdrawn from account  (Pursuant to G.L. c. 261 sec. 29)<br>The prisoner/plaintiff in the above-captioned action has filed a motion to waive the filing fee of $275.00 and court costs (normal) and to proceed in forma pauperis.  After reviewing the affidavit of indigency and the statement of inmate account provided by the correctional facility, the court hereby orders:<br><br>The plaintiff is incapable of paying the filing fee and may proceed in forma pauperis. By the Court. Notice sent 12/17/18 | Giles |
|---|---|---|---|
| 12/28/2018 | 9 | Service Returned for<br>Defendant Turco, III, Thomas A: Service made via regular mail; No Affidavit of Service received from Plaintiff. | |
| 12/28/2018 | 10 | Service Returned for<br>Defendant Silva, Steven: Service made via regular mail; No Affidavit of Service received from Plaintiff. | |
| 12/28/2018 | 11 | Service Returned for<br>Defendant DeMoura, Douglas W: Service made via regular mail; No Affidavit of Service received from Plaintiff. | |
| 12/28/2018 | 12 | Service Returned for<br>Defendant Burnette, Stephen: Service made via regular mail; No Affidavit of Service received from Plaintiff. | |
| 12/28/2018 | 13 | Service Returned for<br>Defendant Foley, Lt.: Service made via regular mail; No Affidavit of Service received from Plaintiff. | |
| 12/28/2018 | 14 | Service Returned for<br>Defendant Hollomon, Patrice: Service made via regular mail; No Affidavit of Service received from Plaintiff. | |
| 12/28/2018 | 15 | Service Returned for<br>Defendant Massachusetts Department of Correction: Service made via regular mail; No Affidavit of Service received from Plaintiff. | |
| 01/02/2019 | 16 | General correspondence regarding Affidavit of Service Received from Julio B. Leiva.<br><br>Applies To: Leiva, Julio B (Plaintiff); Turco, III, Thomas A (Defendant); Silva, Steven (Defendant); DeMoura, Douglas W (Defendant); Burnette, Stephen (Defendant); Foley, Lt. (Defendant); Hollomon, Patrice (Defendant); Massachusetts Department of Correction (Defendant) | |
| 01/17/2019 | 17 | Julio B Leiva's request for Default 55(a)<br><br>Applies To: Turco, III, Thomas A (Defendant); Silva, Steven (Defendant); DeMoura, Douglas W (Defendant); Burnette, Stephen (Defendant); Foley, Lt. (Defendant); Hollomon, Patrice (Defendant); Massachusetts Department of Correction (Defendant) | |

| CIVIL TRACKING ORDER (STANDING ORDER 1-88) | DOCKET NUMBER 1884CV03517 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Julio B Leiva vs. Thomas A Turco, III et al | Michael Joseph Donovan, Clerk of Court |
|---|---|

| TO: Julio B Leiva W107572 MCI Cedar Junction P.O. Box 100 South Walpole, MA 02071 | COURT NAME & ADDRESS Suffolk County Superior Court - Civil Suffolk County Courthouse, 12th Floor Three Pemberton Square Boston, MA 02108 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

STAGES OF LITIGATION                                          DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 02/07/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 03/11/2019 | |
| All motions under MRCP 12, 19, and 20 | 03/11/2019 | 04/08/2019 | 05/08/2019 |
| All motions under MRCP 15 | 03/11/2019 | 04/08/2019 | 05/08/2019 |
| All discovery requests and depositions served and non-expert depositions completed | 09/05/2019 | | |
| All motions under MRCP 56 | 10/07/2019 | 11/04/2019 | |
| Final pre-trial conference held and/or firm trial date set | | | 03/03/2020 |
| Case shall be resolved and judgment shall issue by | | | 11/09/2020 |

The final pre-trial deadline is not the scheduled date of the conference. You will be notified of that date at a later time.

Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

This case is assigned to

| DATE ISSUED 11/13/2018 | ASSISTANT CLERK Margaret M Buckley | PHONE (617)788-8144 |
|---|---|---|

Date/Time Printed: 11-13-2018 11:20:46                                                    SCV026\ 08/2018

Commonwealth of Massachusetts

**2**

Suffolk, SS

Superior Court Dept.
Docket No. 18-3317

Julio B. Leiva

v

Department of Correction, sued in it's official capacity.

Thomas A. Turco III, Commissioner of Correction,

Steven Silva, Superintendant at SBCC,

Douglas W. DeMoura, superintendant at MCI Cedar Junction,

Stephen Burnette, Food Director at MCI Cedar Junction,

Lt. Foley, correctional officer in charge of kitchen at MCI (-),

Patrice Hollomon, Director of Treatment at MCI (-),

all sued in their individual capacities.

## Verified Complaint

Now comes the Plaintiff, Julio B. Leiva (attorney pro-se), a true citizen of the Constitutional Republic and Union, Homo Romanus-Judaeo by Baptism into Holy mother Church under 1492 Royal Decree of Queen Isabella I of Castile a vassal of the Holy Roman Empire patronized by Saint Emperor Constatine the Great Homo-Regious of the King of Kings and Lord of lords Jesus the Messiah the Holy One of Israel, currently a prisoner in the Massachusetts Department of Correction, brings this Civil Action pursuant 42 U.S.C. §1983, and RLUIPA., to redress the deprivation under color of law, for willfully, intentionally and unconstitutionally interfering

blocking and or stopping plaintiff's First and Eighth Amendment Right to Freedom of religion, to petition the government and to be free from cruel and unusual punishment by placing undue burdens on plaintiff's religious exercise, denying the grievance process and subjecting plaintiff to corporal punishments, using kosher diet to deny food and denying basic medical care due to anti-semitism and blaspheme in violation of the United States Constitution, and Massachusetts Declaration of Rights I, II, III, XI, defendant Steven Silva denied plaintiff religious services, medical care and grievance process in violation of clearly established law and promulgated Religious Services regulation 103 CMR 471.00 et seq., 103 CMR 760.00 food service policy and grievance regulation 103 CMR 491.00 et seq., defendant Douglas W. DeMoura denied plaintiff religious services, grievance process and has subjected plaintiff to corporal punishments in violation of clearly established laws and promulgated religious service regulation 103 CMR 471.00 et seq., 103 CMR 760.00 et seq, and grievance regulation 103 CMR 491.00 et seq., defendant Stephen Burnette has denied plaintiff the kosher diet and nutrionally adequate food in violation of clearly established law and the promulgated religious service regulation 103 CMR 471.00 et seq., food service policy 103 CMR 760.00 et seq, defendant Lt. Foley denied plaintiff the kosher diet and nutrionally adequate food in violation of clearly

(2)

3. This court is authorized to render declatory relief pursuant to G.L.c. 231A and Rule 57 of the Mass.R.Civ.P.

4. All of the actions and ommissions and events complained of herein took place in the State of Massachusetts.

## Parties

1. Julio B. Leiva, the plaintiff as Roman-Hebrew American citizen is and was a prisoner and is at all times relevant to this action. He is a citizen of the Commonwealth. His mailing address is P.O. Box 100, South Walpole, MA 02071.

2. The Massachusetts Department of Correction ("hereinafter refered to as Doc"), an agency of the Commonwealth of Massachusetts defendant is at all times relevant to this action. It's mailing address is: 50 Maple St, Suite 3, Milford, MA 01757.

3. Thomas A. Turco III, defendant is the Commisioner of correction a citizen of the commonwealth and at all times is relevant to this action. His mailing address is: 50 Maple St, Suite 3, Milford, MA 01757.

4. Steven Silva, defendant is the Superintendant at SBCC a citizen of the commonwealth and is at all times relevant to this action. His mailing address is: P.O. Box 8000, Shirley MA 01464

established law and promulgated religious service regulation 103 CMR 471.00 et seq., food service policy 103 CMR 760.00 et seq., defendant Patrice Holloman denied plaintiff religious services in violation of clearly established law and promulgated religious regulation 103 CMR 471.00 et seq., to violate plaintiff's state and federal rights, plaintiff seeks monetary damages to redress and remedy the deprivations of his constitutional rights. Plaintiff prays also for injunctive and declatory relief against customs and practices of the Department of correction and the SBCC, and MCI Cedar Junction facilities as violative of the state and federal guarantees and rights of plaintiff and all prisoners who have, are or will be subjected to the customs, practices of the defendant.

## Jurisdiction Statement

1. Jurisdiction is invoked upon this court pursuant to 42 USC. §1983 and RLUIPA. to redress the injuries and deprivations of past and present violations of the First and Eighth Amendment of the United States Constitution; and to redress the injury and deprivations of past and present violation of plaintiffs Massachusetts Declaration of Rights Articles I II III XI.

2. This court is authorized to render injunctive relief pursuant to Mass. R. Civ. P. Rule 65.

(3)

5. Douglas W. DeMoura, defendant is the superintendant at MCI Cedar Junction, is a citizen of the Commonweath and is at all times relevant to this action. His mailing address is: P.O. Box 100, South Walpole, MA 02071

6. Stephen Burnette, defendant is the Food Director at MCI Cedar Junction, is a citizen of the Commonwealth and is at all times relevant to this action. His mailing address is: P.O. Box 100, South Walpole, MA 02071

7. Lt. Foley, defendant is the supervisory Lieutenant for the kitchen, is a citizen of the Commonwealth and is at all times a relevant to this action. His mailing address is: P.O. Box 100, South Walpole, MA 02071

8. Patrice Holloman, defendant is the Director of Treatment at MCI Cedar Junction, is a citizen of the Commonwealth and is at all times relevant to this action. Her address is P.O. Box 100, South Walpole MA 02071

9. At all times relevant hereto and in all of their actions described herein, each defendant is and was acting under the color of law, state authority, statute, custom or usage and pursuant to their official authority.

(5)

10. On 9-19-16 George Hutchinson, Deputy of Reentry, was in receipt of plaintiff's correspondence requesting his religious affiliation be changed to Judaism, plaintiff was directed to director of Treatment Noelle Guerin.

11. On 9-26-16 Kimberly Lincoln, Director of Classification and acting Director of Treatment was in receipt of plaintiff's correspondence dated 9-21-16 requesting that his religious affiliation be changed to Judaism and to receive the kosher diet. Plaintiff was advised of the need to participate in sincerity belief questions for the Jewish faith.

12. On 10-3-16 Kimberly Lincoln was in receipt of plaintiff's staff access pass dated 9-28-16 to be scheduled for sincerity belief questions for the Jewish faith. Plaintiff was advised that he had been scheduled to participate in sincerity belief questions on Monday 10-24-16 at 1:00pm.

13. On 10-24-16 on the appointed date for sincerity belief questions the Superintendent defendant Silva's designee did not show up. Plaintiff had been waiting over a month for the appointment and when the time came plaintiff was denied the procedure which is stated in 103 CMR 471.07 (a) hindering plaintiff's exercise of religious belief and liberty in not providing the equal opportunity to forgo the process to ~~forgo his~~ change his affiliation grievance # 92379 was submitted.

(6)

14 • On 10-31-16 based on plaintiff's answers to the Jewish sincerity belief questions, Kimber Lincoln approved the change in religious affiliation to Jewish. During the interview plaintiff stated he is a Hebrew believer in Jesus as the Messiah. Also per request special diet (kosher) form was given. Grievance 92379 was approved.

15 • On 12-14-16 plaintiff submitted staff access pass because he had entered SBCC on may 22, 2016 and has signed up for religious services since at least of June of that year but has not been allowed to attend even after he has been cleared by the IPS to go to any program. The Rabbi has not come to see plaintiff.

16 • On 12-27-16 Kimberly Lincoln was in receipt of plaintiff's letter dated 12-22-16 requesting to attend religious services. Plaintiff was told that he may choose to audit one religion for a period of time. In order to keep attending plaintiff must denounce his faith and choose another one he wants to attend.

17 • On 1-9-17 Grievance # 94012 was submitted by plaintiff due to being constantly denied to attend religious services even the Kwanza program which is open to all inmates and comes only once a year. Plaintiff was on the list and cleared by IPS to attend services but was still denied to go as a result plaintiff was forced to be in the R.1 unit during a disruption and exposed to chemical agents.

(7)

18 • Plaintiff as a practioner of messianic Judaism/Judaeo Christianity a Hebrew believer in Jesus tries not to be a burden due to lack of individulized programs and seeks to attend those services that have Jesus as part of their curriculum but is told I have to denounce my faith. Plaintiff experiences derogatory comments and blaspheme by officers and unbearable amount of anti-semitism grievance # 94012 was denied.

19 • Plaintiff was denied medical attention where nurse and officer seen plaintiff in the SMU o suffering the after effects of the chemical agents, coughing up phlegm and having a high fever. Plaintiff was denied tylenol during medical round and told to sign up for sick call. Plaintiff was never seen by medical staff even though he suffered the symptoms for several days.

20 • Plaintiff still has not seen a Rabbi even though he has been on the list for months.

21 • Plaintiff ~~still was~~ appealed grievance # 94012 due to going through a tough time in his life and wanting to speak to a Rabbi, Deacon, or Priest for counseling and spiritual guidance. Plaintiff much rather speak to clergy because Mental health will not help unless you try to kill yourself. Plaintiff still has to deal with anti-semitism and Blaspheme from staff. grievance was denied no reasons were stated other than no merit a generic statement.

(8)

22 • On 2-1-17 plaintiff was transferred to the Rb at MCI Norfolk. Medical staff at Norfolk diagnosed plaintiff with Asthma due to suffering a anti-respiratory infection. Plaintiff has shortness of breath is put on medication (asthma pump), suffers chest pains due to the negligence of the SBCC staff.

23 • On 3-1-17 The first time plaintiff gets to see a Rabbi.

24 • On 3-21-17 plaintiff submitted grievance # 95503 was submitted due to the ongoing difficulties in the Kosher diet. Items that are supposed to be served in the Kosher tray in accordance to the kosher menu cycle do not come in the tray and plaintiff is denied the items simply because it did not come in his tray. The items missing are considered neutral foods because regardless of whichever diet a inmate is on the whole population receives them. Items such as apples, bread, potato chips plaintiff was denied these items even when they were delivered to the unit in the food cart. Grievance was denied.

25 • Grievance # 95503 was appealed by plaintiff due to segregation being a much more harsher living situation than normal prison population conditions and denial of food in segregation for plaintiff creates an acute problem where he is denied food the whole population gets even those on the Kosher diet. Also there are days that the water is undrinkable. Appeal was denied

26. On 3-21-17 grievance #95665 was submitted due to witholding plaintiff's complete Jewish Study Bible. On 4-2-17 grievance was partially approved.

27. On 3-27-17 Plaintiff asked Lt. Percell to find out procedure to get clergy's phone number approved but was denied by the IPS.

28. While at MCI Norfolk plaintiff suffered more acute chest pains and shortness of breath. Medication was was raised to a steroid pump.

29. On 5 may 2017 plaintiff was transferred to MCI Cedar Junction to the Disciplinary Detention Unit (DDU) and was made to reapply to the Kosher diet in order to receive it. Plaintiff was approved on 5-26-17.

30. On 8-22-17 plaintiff submitted grievance #98002 due to the Kosher diet coming short and with missing items which are on the menu. There is no variety of trays and the plaintiff is denied to observe his faith as allowed by the courts. Grievance was denied on 9-6-17. On 9-8-17 grievance was appealed due to the food Director Burnette not serving the Kosher diet in accordance to DOC standard, policy and regulation. Appeal was denied on 9-12-17 by superintendant Michael L Rodriquez. Appeal denial was appealed to higher authority of the Commisioner Turco's office grievance manager Kate Silva who refused to redress the issue and based her denial on superintendant's false investigation. Appeal was denied on 9-26-17

31. On 9-23-17 Plaintiff was not allowed to observe fall Holy days already defined in Doc religious service handbook. Plaintiff had spoken to Director of Treatmen defendant Patrice Hollomon about the Holy day need of Yom Kippur. Plaintiff requested that he be allowed to fast during the day and his meals be brought in the evening with dinner food cart.

32. Plaintiff put in various complaints due to shortage of food items on kosher trays and non-compliance to 760 food policy but complaints were diverted and never answered. Meanwhile plaintiff's food keeps on coming uncooked and is made to go on without eating.

33. On 11-15-17 Plaintiff filed a emergency grievance due to the issue with the kosher diet persisting. Plaintiff tried to speak to defendant Burnette but his excuse for the missing items is that the officers take the items for themselves. The officers state that they don't take them and try to rectify the problem by calling the kitchen but get no remedy to offer plaintiff. Plaintiff's trays come uncooked and is unable to eat the tray yet no replacement is given. Officers try to as much as possible try to help plaintiff but are tired of dealing with the kitchen. Grievance was returned because Sgt. Dubois did not consider it to be a emergency. Plaintiff was given 3 days to resubmit but once he resubmitted it plaintiff heard anything back.

(11)

34. On Thanksgiving of 2017 the whole inmate population is given a special thanksgiving meal for lunch but plaintiff's kosher turkey tray came uncooked. The officer serving the trays was notified but kitchen did not provide any remedy. The plaintiff was not allowed to celebrate and eat on Thanksgiving as if somehow his religion excludes him from being American. Apple pies were also handed out to all other inmates. Apple pies were kosher but plaintiff was denied one simply because it did not come in his tray but on the food cart. Informa complaint submitted but was never filed.

35. On 12-18-17 the kitchen did not send the plaintiff a breakfast tray sgt. Sammuels was aware being the one to hand out the trays and called the kitchen. At first he received no answer but eventually a tray was brought to DDU but the french toast was so burnt that it was unedible due to it's hardness. Defendant Burnette spoke to plaintiff on 12-13-17 and gave assurances that no more incidents should happen since he had implemented a new method to keep track of items in the kosher diet but it is not working. Kitchen still claims the kosher diet is in compliance and accounted for. Grievance was submitted but was never filed by grievance officer sgt. Dubois.

(12)

36. On 12-18-17 plaintiff submitted informal complaint because for lunch he was missing items from his cold kosher tray and he did not receive any chips with bologna. According to defendant Burnette he was supposed to implement a new method to keep track of what goes out but it is either not working or according to him the officers are taking the items. Plaintiff submitted grievance but was never filed.

37. On 12-19-17 Plaintiff submitted informal complaint due to missing items on his breakfast kosher tray like the fruit, butter items that normally come in his tray. Grievance was submitted but never filed by grievance officer.

38. 12-20-17 Plaintiff filed a informal complaint due to lunch items coming missing on his tray. He also did not receive any chips with his bologna tray. Answer to informal was that it was already addressed, grievance was submitted but never filed.

39. On 12-20-17 Plaintiff filed informal complaint due to the breakfast kosher tray being served with non kosher items milk, butter, are all non kosher items and juice boxes are not being served. Grievance was submitted but not filed by the grievance officer.

(13)

40. On 12-25-17 Plaintiff for christmas when the rest of the inmate population receives a special christmas meal for lunch, plaintiff was served a uncooked kosher tray and was unable to eat it. Plaintiff informed the officer but no remedy was given to plaintiff and he was forced to go without eating once again even on the Lord's birth's celebration. Informal complaint was ~~filed~~ submitted but was never filed.

41. On 1-9-18 plaintiff filed informal complaint because Rabbi ~~Schein~~ Schneider had sent a letter and the Rabbi informed plaintiff that he had sent 7 vibrant water color art cards for Hannukah but they were not given to plaintiff and no contraband slip was given to plaintiff. The art cards were thrown out by mail room because there was nothing on file or in the contraband locker. Rabbi Schneider is the Rabbi for Shalom ministries international DbA Discovering the Jewish Jesus a 501(c)(3) non-profit. Grievance was submitted but never filed.

42. On 1-9-18 Plaintiff received uncooked food tray. This keeps on happening with the kosher diet and the defendant Burnette keeps on telling plaintiff he will take care of it to no avail.

(14)

43 • On 1-10-18 plaintiff filed a informal complaint because the kosher diet lunch tray came with missing items, It came with only bologna no cole slaw, no potato salad, no chips and no bread. Grievance was submitted but not filed.

44 • On 1-11-18 Plaintiff's breakfast kosher tray came with no fruit. Informal complaint was denied alledging that fruit is not served with breakfast. Statement is contrary to k-menu cycle. Grievance was submitted but not filed.

45 • On 1-14-18 kosher breakfast tray was missing fruit among other items. Informal was denied alledging fruit is not served daily with breakfast. Grievance was submitted but not filed.

46 • On 1-15-18 kosher breakfast tray was missing fruit and other items. Informal was denied. Grievance was submitted but not filed.

47 • On 1-21-18 Plaintiff's kosher tray was not fully cooked. this is a ongoing problem. The informal complaint response said that the meals have instructions on them but the defendant Burnette confirmed to plaintiff that the kitchen is not cooking trays all the way. Meals are supposed to be put in the oven for 30 minutes and what he is observing is not 30mins. Grievance #99512 was denied alledging that proper procedure is being followed.

(15)

48. On 2-2-18 Plaintiff's Kosher tray for lunch was not fully cooked. Plaintiff informed officers passing out the trays and noted the problem. Lt Redd was notified and his attitude was dismissive stating "what the kitchens sends is what you get." The situation was not rectified and plaintiff went without eating lunch. Informal complaint was granted, problem was formally acknowledge and answer stated "that the times the meals are put in the oven and removed are being recorded to ensure meals are cooked thoroughly.

49. On 3-8-18 and 3-11-18 grievance #s 99512, 99393, 99394 were appealed to Kate Silva, the Department grievance manager, due to the undue delay in response and no notice of extension notice was ever given to plaintiff. Plaintiff also wrote Kate Silva letter was dated 3-14-18 and she informed plaintiff that grievance extensions were documented properly and that a decision was made on grievance #99393 and enclosed a copy of the decision.

50. Plaintiff was informed of decision by Kate Silva and she enclosed a copy of grievance #99393. If plaintiff did not write the department grievance manager he would of never received the decision and be denied the grievance process set forth in 103 CMR 491.00 grievance appeal was filed on 3-22-18 and denied 3-26-18. Meanwhile plaintiff still suffers deprivation of rights.

(16)

51. On 3-26-18 Kate Silva the Department grievance coordinator responded to a detailed letter plaintiff wrote which outlined the problem with the Kosher diet and the denial to the grievance process. At MCI Cedar Junction the staff log extensions and grievances in IMS and fail to give copies to plaintiff in accordance with 103 CMR 491.15 (c).

52. Catholic chaplain Hermina Hyan Cintha wrote plaintiff stating that she cannot help, write, contact or provide reference to outside clergy. The poor lady is intimidated by the DOC to carry out her job duties set forth in 103 CMR 471.00 et seq.

53. On 2-13-18 Plaintiff wrote Director of Treatment defendant Patrice Holloman ahead of time to be placed on the list to observe the Passover Holy days. Plaintiff was approved. On 2-26-18 Memo was passed out.

54. On 3-28-18 Plaintiff was transfered to SBCC but before departure plaintiff confirmed with the defendant Holloman that he was logged in the IMS for Passover. Defendant Holloman confirmed that it was logged in the IMS and should not have any problems in receiving the Passover meals at his next stop.

(17)

55 • On 3-29-18 Plaintiff wrote the Director of Treatment at SBCC just to make certain they had him logged in the IMS for Passover observance.

56 • On 3-30-18 at the begining of the Passover observance Plaintiff was denied the Passover meals and told that he was not listed on the IMS to receive the meals. Plaintiff wrote a informal complaint due to the denial of this sacred and legally protected religious exercise. Informal complaint was denied on 4-3-18 and stated that as soon as they were notified he was a Jewish inmate he was given the meals.

57 • On 3-30-18 Plaintiff wrote a letter addressed to the commisioner of Correction defendant Thomas A. Turco III. informing him of all the violations Plaintiff suffered and continues to suffer due to being substantially burdened in his religious exercise. Letter was reffered back to SBCC to Kimberly Lincoln who gave plaintiff a generic answer.

58 • On 4-6-18 Plaintiff appealed the informal complaint and submitted grievance. Grievance was returned on the pretense that plaintiff did not submit step one the informal complaint form in order for Passover observance time limitations to run against the plaintiff.

(18)

59 • Grievance was resubmitted on 4-11-18 and filed under grievance # 100281, plaintiff was not placed and given passover meals until 4-4-18 5 days after the observance started. Plaintiff requested to make up the days missed by participating in the Passover shenit due to not only starting the observance towards the end but also due to the refusal of the kitchen staff to serve meals properly and not defile the observance by placing leaven bread in the trays. Also the kitchen staff withheld certain trays during the observance. Grievance staff were also told to stop playing games with the grievance process.

60 • On 4-20-18 due to delay in observance of Passover and no status update plaintiff wrote and appealed to superintendant defendant Steven Silva but was told to wait the decision of the Institutional grievance coordinator.

61 • On 6-13-18 grievance was partially approved 2 months after the observance passed and no remedy was provided for the viclation of plaintiff's religious exercise. On 6-20-18 grievance was appealed to defendant Silva because kosher meals especially during the passover are not served in compliance with policy and regulation. The violations of plaintiff's religious exercise viclate state and federal standards.

62. On 6-13-18 in the N-1 unit at SBCC officers had a picture up in their workstation of the American flag, Commander in Chief President Donald Trump, and Vice President Mike Pence up in plain view for all Americans to see. The administration told the officers to take it down, Plaintiff feels is partly due to their anti-semitic views and Trumps move for the embassy to Jerusalem, but for whatever the reason they were told to do it is totally unconstitutional and unpatriotic and a total disrespect to veterans that work there. Also President Trump promised to fight for the forgotten men and women of this country- and that includes prisoners. Informal complaint was filed on 6-27-18

63. Many states and local goverments, in red and blue states have implemented policies over the past decade that have lowered cost, cut crime and reduce recividism. The Plaintiff suggested that the Commonwealth and DOC should follow suit and stop robbing prisoners and officers of American Liberties. Informal complaint on 7-12-18 a alternate resolution was offered and the administration was notified of the issue.

64. For Alternate resolution Plaintiff submitted a religious request form in July.

65. Plaintiff kept on submitting Informal complaints but not receiving anything back. The Kosher diet is not ~~woos~~ being served properly.

66. On 7-29-18 due to the situation with the Kosher diet persisting and not being rectified plaintiff was served food on the Kosher tray that was from the mainline (elbow salad) that was not Kosher. Informal and grievance was submitted and on 9-28-18 grievance #101582 was partially approved but no remedy was given.

67. On 8-24-18 Plaintiff was transfered to MCI Cedar Junction.

68. The Kosher diet at MCI Cedar Junction is still not being served properly in accordance to 760 food service police. Plaintiff has written various Informal complaints and is being completly denied on this issue to access the grievance process.

69. Defendant Patrice Hollomon has been informed by the plaintiff of the many violations still occurring with the Kosher diet and religious services but no action has been taken.

70. The Rabbi was brought by defendant Patrice Hollomon plaintiff informed them that the Kosher diet is not being served properly and is used as a means for punishment by defendant DeMoura and his staff. Plaintiff requested that the Rabbi and Director of Treatment oversee the

the Kosher diet since it is a religious activity and falls under the duty and authority of the chaplain defined in 103 CMR 471.00 et seq in order to rectify and correct the violations the plaintiff suffers.

71 • Plaintiff is being summarily sanctioned and is subjected to corporal punishments such as being denied showers, phone, running water, sanitary living conditions, clergy, spiritual counseling and deprivation of food. The deprivation of food being a everyday occurrence especially at MCI Cedar Junction.

72 • Officer San Innocencia and Sgt. Beau pass out the meals most often and always notice the shortages in the Kosher diet. When they call the kitchen defendant Lt. Foley always refuses to rectify the situation.

73 • Defendant Burnette has not come to talk to plaintiff.

74 • Deputy superintendant Hockert-Lotz and cpt. Friar came around and were notified of the problem with the Kosher diet but no remedy has been given.

75 • Inmates on the regular diet that are in the same tier as the plaintiff receive for breakfast, lunch and dinner various days Kosher snacks

(22)

such as cakes, muffins, cornbread, cookies while plaintiff does not get any of the kosher snacks. Defendant Lt. Foley refuses to give plaintiff any variety in the snack always putting a apple in the trays. Apples are often rotten.

76. Lt. Foley does not adhere to the k-menu cycle. and it results in plaintiff not having a adequate religious diet that is consistent to his belief and that nutrionally adequate.

77. On 10-23-18 Plaintiff spoke face to face to defendant DeMara on his first round in ten block since plaintiff arrived at MCI Cedar Junction. Plaintiff inquired about his correspondence and denial of the grievance process on the kosher issue asking defendant to correct the violations and deficiancies in his diet.

78. On 10-23-18 Deputy Superintendant Hockert-Lotz also did a round in 10 block and plaintiff asked the deputy if she can talk to the defendant DeMara since she is already keenly aware of the problem with the kosher diet.

79. On 10-25-18 The Religious Review committe ("RSRC") refuses to give the plaintiff a answer on his religious request form and it already has been submitted and filed since July approximately 3 months ago.

(23)

80 • Defendant Dermoura has implemented policy outlined in the Ten Block orientation manual that limits to having in possesion only 1 religious book

81 • Plaintiff faces a DDU hearing and is liable to go back there. The last time plaintiff was there his health suffered greatly due to the nutritionally inadequate Kosher diet. Plaintiff went from weighing 210 pds to 180 pds and suffered stomach pains and problems.

82 • On 10-23-18 Plaintiff sent via certified mail complaint pursuant 104 CMR 32.00 for to Department of Mental health and human resources Commisioner Joan Mikula due to mental health worker refusal to listen to plaintiff's repetitive pleas of human rights violations at ten block, MCI Cedar Junction and denial to write a complaint or inform anyone. This denial allows the defendants to keep on perpetuating corporal punishments using food, religion and other basic human rights.

83 • On 10-28-18 Plaintiff tried to call Pastor Daniel Olivas on his international call list but all of plaintiff's international numbers which are all clergy from his congregation in Mexico have been wiped off with no notice.

84 • water in ten block is often black or brown.

85 • On 10-29-18 Plaintiff was not allowed to call his personal attorney Angelica Kanuha who helps litigate his conditions of confinement. Kosher diet is still a problem.

86 • Plaintiff has not been able to sleep, has anxiety and is nervous all the time.

(24)

<u>Facts Re: Roman-Hebrews</u>

87 • Roman-Hebrew Israelites subscribe to the doctrines of the Catholic faith and are in full communion with the Bishop of Rome, the Pope.

88 • Roman-Hebrew point of differentiation lies not in dogmatic beliefs but in liturgical practices. for example, their liturgical calendar might differ from the liturgical calendar
  ✳ use by Latin catholics in their retention of certain Jewish <u>Holy days</u>.

89 • Roman-Hebrews may celebrate Passover, Rosh Hashana, Shavuot etc. and even wear traditional ritual wear like Kippot, tallitot, tefilin, use mezuzot, and keep many mitsvot (commandments) in the Torah as a sign as their heritage.

90 • Saint Paul the Apostle is mentioned in passing in The Acts of the Apostles to have observed the Jewish religious Holy days (Acts 18:21; Acts 20:6; Acts 20:16; 1 Cor 16:8).

91 • Thanks to saint Emperor Constantine the Great to be Roman is to be Christian council of Nicea 325 A.D.

92 • A Hebrew is one who crosses over just like our Father Abraham who was called out by God and crossed from darkness to righteousness. Jesus is the King of the Hebrews for He undertook the greatest crossing from death to life.

93 • Roman Hebrews are not a sectarian group within the Catholic Church, nor is it a schismatic movement outside it.

94 • Roman-Hebrews have a broad range of believers, from those who observe much of the Jewish ways up to those who observe the same as Orthodox Jews.

95 • Roman-Hebrews believe they have the fullness of the promise given to Abraham in Jesus.

96 • Plaintiff is a Roman by Baptism into Holy Mother Church under the Admiral of the Sea Saint Christopher Colombus the Christ Bearer by 1492 Royal Decree of Reina Isabella I of Castile.

97 • Roman-Hebrew is the same as saying Judaeo-Christian or messianic Jew and is still considered Jewish

98 • Plaintiff is of three different ethnicities due to the discovery of the New World and the Tran-Atlantic Slave trade - European/Spaniard, Native American/Arawak and African/Hebrew made one new creature in Christ.

# Cause of Action

## First Amendment

99 • Defendants Turco, Silva, DeMoura, Burnette, Foley and Holloman have created a deprivation of right by substantially burderning plaintiff's religious exercise and failed to take the necessary steps to correct the violation after receiving notice of clearly established First Amendment of freedom of religion and to petition the goverment when they denied plaintiff religious services, programs and the grievance process in complete disregard of 103 CMR 471 et seq inmate religious regulation and 103 CMR 491 et seq.

100 • The failure of defendants to timely and reasonably correct the violations of plaintiff's First Amendment Right.

101 • Defendants have failed to enforce clearly established Massachusetts Department of Correction Regulation, laws of the commonwealth of Massachusetts and the provisions of the United States Constitution and the challenge conduct violates the guarantees of liberty and religion.

102 • The defendants acting under the color of law and the authority of the Mass. DOC intentionally, negligently, and with complete deliberate indifference for plaintiff's rights caused by their acts and ommissions plaintiff to be deprived of his Constitutional rights, including but not limited to those under the First Amendment by ignoring complaints about plaintiff being substantially burdened in his religious exercise and denial of the grievance process, failing to correct the problem.

103 • The defendants, knew or should have known, that substantially burdening plaintiff's religious exercise in violation of plaintiff's First Amendment Right to freedom of religion pursuant to the duly promulgated Regulation 103 CMR 471 et seq, would result in deprivation of freedom of religion rights of the First Amendment, commonwealth of Massachusetts law and clearly established law set forth in Sherbet v. Verner.

(28)

104 • Defendant DeMaura created a deprivation of right by restricting plaintiff to only one religious book and failed to take the necessary step to correct the violation after receiving notice of clearly established First Amendment Right to freedom of religion in complete disregard of 103 CMR 403.10 (4) and clearly established laws set forth in Hudson v. Marshall

105 • Property issues are the lawfully governed promulgated Property regulation 103 CMR 403.00 and is issued pursuant M.GLC 124 §§ 1 (b), (c) and (a); c. 127 §§ 3, 96A and 96B.

106 • The First Amendment protects "an individual's freedom to speak, to worship and to petition the goverment for the redress of grievances" and federal courts "have long understood as implicit in the right to engage in the activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious and cultural ends." Roberts v. United States Jacees, 468 U.S. 609, 622 (1984).

107 • Defendants Turco, Silva and DeMaura have created a deprivation of right by denying plaintiff diplomatic relations with the pope and Vatican state and failed to take the necessary steps to correct the violation after receiving notice of clearly established First Amendment right to freedom of religion, to speak, and petition the goverment in complete disregard of 103 CMR 471.00 and 103 CMR 462.07(3)

(29)

## Count II
## Eighth Amendment

108 • Plaintiff repeats and realleges paragraphs 1-107 as fully set forth hereinafter.

109 • The defendants Turco, Silva, DeMoura and Burnette have created a deprivation of right by showing complete indifference to serious medical need and using food as punishment and deterent and failing to take the necessary steps to correct the violations after receiving notice of clearly established Eighth Amendment right to be free from cruel and unusual punishment when they denied medical attention and used the Kosher diet and denial of food, and food that is inadequate and unnutrionally in complete disregard of 103 CMR 760 et seq, Food Service Policy.

110 • Food service policy is the lawfully governed promulgated food service regulation 103 CMR 760 and is issued pursuant M.G.L.C. 124 § 1 (c) and (q); 105 CMR 590.00

111 • The failure of defendants Turco, Silva, DeMoura and Burnette to timely and reasonably correct the violations of plaintiff's Eighth Amendment Right.

(30)

112 • The defendants Turco, Silva, DeMoura and Burnette have failed to enforce clearly established Massachusetts Department of Correction regulation, laws of the Commonwealth of Massachusetts and the provisions of the United States Constitution and the challenge conduct violates the guarantees of liberty.

113 • The defendants Turco, Silva, DeMoura and Burnette acting under the color of law and the authority of the Mass. DOC intentionally, negligently, and with complete deliberate indifference for plaintiff's rights did cause by their acts, and ommissions plaintiff to be deprived of his constitutional rights, including but not limited to those under the Eighth Amendment by Ignoring complaints about the denial of adequate nutrionally food and using food as punishment, failing to correct the violation.

114 • The defendants Turco, Silva, DeMoura and Burnette, Knew or should have Known, that using food as punishment and detterent, and denying proper medical treatment in violation of plaintiff's Eighth Amendment to be free from cruel and unusual punishment pursuant to the duly promulgated regulation 103 CMR 760.00 would result in deprivation of right to be free from cruel and unusual punishment of Eighth Amendment, Commonwealth of Massachusetts law and clearly established laws of the land.

# Count III
## Massachusetts Declaration of Rights Articles

115 • Plaintiff repeats and realleges paragraphs 1-114 as fully set forth here and after.

116 • Article I

Defendants actions have stripped plaintiff of natural, essential and unalienable rights given by the Great Legislator on account of race, creed and religion.

117 • Jews as well as Christians are protected by constitutional guarantees of Religious liberties and equality. blaser v. congregation Kehillath Israel (1928) 161 N.E. 619, 263 Mass. 435.

118 • §36 Blasphemy

The violations of the defendants and their staff and the failure to correct them is intended to caluminate and disparge God and impair and destroy reverence due to Him. Commonwealth v. Kneeland (Mass. 1838) 37 Mass. 206, 1838 Mass. LEXIS 35

119 • Article II

The violations of the defendants and failure to correct them has substantially burdened the plaintiff's religious exercise even when it is not against penological interest

(32)

120. <u>Article III</u>

The violations of the defendants and the failure to correct them has failed to promote the happiness and prosperity of a people and the security of a republican goverment by denying plaintiff religious services that provide instructions in piety, religion, and morality

121. <u>Article XI</u>

The violations of the defendant to deny plaintiff redress to his grievances and recourse to the laws and failure to correct the violations placed him in a oppressive state contrary to his religious principles, human dignity and basic human moral.

(33)

Count IV

## RLUIPA 42 U.S.C. § 2000 cc-1(a)

122. Plaintiff repeats and realledges paragraphs 1-121 as fully set forth hereinafter.

123. The actions and inactions of the defendants have imposed a substantial burden on the Plaintiff's religious exercise of (1) observing the Holy Diet in that superintendants Steven Silva, and Douglas W. DeMoura and Commissioner Thomas A. Turco claim that they are providing the Holy Diet and that it is served in accordance to policy when in fact these items are not being provided, with no variety and rotation of trays and foods; (2) drinking only pure water from a source as approved of by the Holy Diet; (3) properly observing Holy Days using the ceremonial foods and items required on each respective Holy Day at each appointed time set by GoD; (4) Pastoral care and counseling, Pastoral care and counseling from representative in community, Pastoral visits; (5) Allow Chaplain to facilitate and monitor phone calls to meet and obtain specific program needs.

(34)

124. Denial of bottled spring water is not in furtherance of any compelling governmental interest and is not the least restrictive means of furthering any compelling governmental interest when officers and administrators are all drinking bottled water because the water is brown or black and the various substances in the water are definitely not a part of the Holy Diet and are refused on religious grounds per religious laws of the Bible. The black and brown water is a serious burden on Roman-Hebrew religious exercise.

125. The Doc defendants including Steven Silva, Dagla W. DeMaura and Stephen Burnette have no compelling governmental interest in refusing to order ceremonial foods for Jewish inmates. The defendants have no compelling governmental interest in discriminating against Jewish inmates wheter Roman, Orthodox, messianic during passover in refusal to order the right ceremonial foods and materials for the passover.

126. The Doc defendants have no compelling governmental interest in refusing to provide special Holy diet foods for shabbat (saturday/sabbath) during the year and the best food items available so that Jewish inmates are able to honor the shabbat and keep it holy as Gods fourth commandment requires.

127 • The defendants have each, by their actions and by their inactions, intentionally discriminated against Jewish inmate Plaintiff and his religious exercise.

128 • Denial of the Holy diet and religious exercises by the various types of machinations, misrepresentation including false answers in informal complaints and grievances, intimidation and denials of due process have not been in furtherance of any compelling governmental interest and is not the least restrictive means of furthering any compelling governmental interest.

129 • Refusal to allow plaintiff Pastoral care and counseling, Pastoral care and counseling from representative in community. Pastoral visits has not been in furtherance of any compelling governmental interest and is not the least restrictive means of furthering any such interest.

130 • Thomas A. Turco III has no compelling governmental interest in his ignoring Jewish plaintiff's letters, RSRC request, special diet request, and other religious request and his various machinations, misrepresentations, and intentional discriminations are not the least restrictive means of furthering any compelling governmental interest.

(36)

131 • Steven Silva and George W. DeMoura, Stephen Burnette Lt. Foley and unknown persons have no compelling governmental interest in denying plaintiff's observance of the kosher diet and making it nutritionally inadequate while denying administrative remedies related to these denials and intentional discriminations through various machinations, misrepresentations, intimidations and to refuse to process BSCC request, and grievances while plaintiff has submitted too many to count and most of them were discarded and not processed or were used as a deterrent and obstacle, which also had the immediate affect of plaintiff not eating and ability to observe the Passover 2018, unable to properly have ceremonial foods.

132 • Douglas W. DeMoura, Thomas A. Turco III had no compelling governmental interest in having their employees in the Ten block and DDU and kitchen intimidate and coerce using threats and corporal punishments to withdraw from religious exercises.

133 • The extreme reactions caused by the under imposed an extreme hardship on plaintiff's religious exercise when his belief is that his body is the temple of God and is being desecrated by the worker.

134 • The defendants have no compelling governmental interest in denying plaintiff contact with his personal attorney to help litigate and maintain contact with clergy, diocese, pope and Vatican in order to obtain religious needs for exercise and advocacy.

135 • Pope is "foreign official" under 18 USC 3112 since he is head and director of Vatican state, independent country. United States v Vazquez (1994, CA5 Tex) (867 F.2d 872. Plaintiff is a subject of the Holy Roman Empire and adheres to the Nicene creed (Apostles creed).

Count V

## Physical Injuries

136. Plaintiff repeats and realledges Paragraphs 1-135 as fully set forth hereinafter.

137. Defendant Steven Silva behaved outrageously with deliberate and intentional action denying plaintiff religious services and placing him in volatile situation and denying medical treatmend due to anti-semitism and blaspheme causing Asthma, chest pains by placing undue burdens in plaintiff's religious exercise.

138. Defendant Douglas W. DeMoura behaved outrageously with deliberate and intentional action denying plaintiff religious diet that is notrictionally adequate causing weight loss, stomach problems by placing undue burdens in plaintiff religious exercise.

## Emotional Distress

139. Defendants Silva, DeMoura behaved outrageously with deliberate and intentional action placing undue burdens on plaintiffs religious exercise causing uncertainty, apprehension, fear, anguish and traumautic mental and emotional suffering due to using being subject to corporal punishments and denial of canseling and religious services.

140. As a direct result and proximate result of the defendants' actions the plaintiff has suffered and continues to suffer the injuries and psychological harm.

## Injunctive Relief

141 • The plaintiff repeats and realleges paragraphs 1-140 as fully set forth hereinafter.

142 • WHEREFORE, the plaintiff request he be granted a tempoary restraining order or preliminary injunction as:

  a) the defendant and all persons acting under the direction, control, permission or authority of defendant shall be restrain and enjoin placing undue burdens on plaintiff's religious exercise that are not in furthering any compelling interest.

  b) There is no reasonable actionable remedy of law to provide for the damages against plaintiff's Constitutional and civil rights as a result of defendant's conduct and actions.

## Declatory Judgement

143 • The plaintiff repeats and realleges paragraphs 1-142 as set forth fully hereinafter.

144 • Declare the rights of plaintiff, to freedom of religion under the Promulgated Department of Correction Religious Regulation 103 CMR 471.00

145 • Declare that plaintiff has First and Eighth Amendment right to have sanctions placed on him in a manner that is not inconsistent with DOC regulation and basic human rights.

(39)

<u>Prayers for Relief</u>

WHEREFORE, the Plaintiff prays that this Honorable Court grant him the following:

A. Issue a tempoary restraining order to defendant to cease and desist from placing undue burdens on religious exercises.

B. Award compesatory damages in the amount $50,000.00 from each defendant individually for violating plaintiff's federal civil rights under the First Amendment.

C. Award compesatory damages in the amount $50,000.00 from each of the following defendants Thomas A. Turco III, Steven Silva, Douglas W DeMoura and Stephen Burnette individually for violating plaintiff's federal civil rights under the Eighth Amendment.

D. Award compesatory damages in the amount $50,000.00 From each defendant individually for violating plaintiff's State civil rights under Articles I II III XI

E. Grant Plaintiff a Jury Trial.

F. Award punitive damages.

G. Award Plaintiff attorney fees

H. Award Plaintiff cost he incurs in this action.

I. Grant the Plaintiff any other relief this court deems Just and proper.

Date: _____

Respectfully Submitted,

s/ ___

Julio Leiva (attorney pro-se)
P.O. Box 100
South Walpole, MA 02071

(46)

# EXHIBIT B

Commonwealth of Massachusetts

Suffolk, ss                         Superior Court Dept.
                                    Docket No. 1884CV03517

Julio B. Leiva

            V

Turco, et al

### Plaintiff's Motion to Respond In Opposition to Defendant's Turco, Silva, DeMoura, Hollomon and Mass. DOC's Motion to Dismiss

Now comes the Plaintiff, Julio B. Leiva (pro-se), in the above-entitled matter and moves this Honorable Court to allow motion to respond in opposition to defendants Turco, Silva, DeMoura, Hollomon and Mass. DOC's motion to dismiss attached in support of this motion is memorandum.

WHEREFORE, Plaintiff prays this Honorable Court grant him this motion.

Date: 7-1-19                    Respectfully Submitted,

                                S/ _____
                                Julio B. Leiva (pro-se)
                                P.O. Box 100
                                S. Walpole, MA 02071
                                                over →

Commonwealth of Massachusetts

SUFFOLK, SS.                                    Superior Court
                                               Docket No. 1884CV03517

Julio B. Leiva
        V.
Turco, et al

## Proof of Service

The undersigned certifies that plaintiff did cause true copies of the following documents:

1. Motion to respond in opposition to motion to dismiss
2. Memorandum in support of Motion to respond to the defendants via first class mail to their attorney Nancy Ankers White last known address/ place of business: 70 Franklin St, Suite 600, Boston, MA 02110 on

Signed Under The Pains And Penalties Of Perjury On the ___ Day of ___ In the Year Of Our Lord, 2019

Date: _____                        Sincerely,

Commonwealth of Massachusetts

Suffolk, ss                                    Superior Court Dept.
                                               Docket No. 1884CV03517

Julio B. Leiva
        V.
Turco, et al

### Plaintiff's Memorandum in Support of Motion to Respond in Opposition to Defendants Turco, Silva, DeMoura, Hollomon and Mass. DOC Motion to Dismiss

Plaintiff moves to continue with litigation for the reasons stated below.

Introduction.

The Plaintiff, Julio B. Leiva (pro-se), a Hebrew believer in Jesus as the Messiah brings this civil action pursuant 42 U.S.C. s.1983 and R.L.U.T.P.A. due to being substantially burdened in his religious exercise of his faith, Plaintiff agrees with the Constitutionality of the statutes and DOC regulations but rather argues against the arbitrary action of the goverment in accessing the provisions as intended resulting in his First Amendment violation. Plaintiff has filed numerous grievances with no real investigations taking place or provisions provided even after partial approvals. As examples partially approved grievances are attached as

(1)

Exhibits 1A and 1B" admitting violations do exist. Ex 1A deals with the ongoing problem of being served unkosher items in the kosher diet, Ex 1B deals with missing food items and being denied kosher items still being a persistent problem, this is a long list of violations which also include uncooked meals being served, denial of observing holy days, pastoral care and counseling, pastoral care and counseling from representative in community, pastoral visits, and the ability of chaplain to facilitate and monitor phone calls to meet and obtain specific program needs, all of the claims have been preserved for suit exhausting all administrative remedies after informal complaint was given alternative resolution (attached as "Ex 2A") and filling out the Inmate Religious Request Form (attached as "Ex 2B"), reviewed by the DOC'S Religious Service Review Committee ("RSRC") (attached as "Ex 2C") and being denied by both the RSRC and Commissioner's office (attached as "Ex 2D"). All of the First Amendment violations are not mere inconveniences but are cumulative of the Eighth Amendment violations of cruel and unusual punishment resulting in physical and psychological harm. The constitutional violations propogated by the defendants' own actions reflect reckless and callous indifference to the rights of the Plaintiff.

## Standard of Review

Ruling on a motion to dismiss for "failure to state

(2)

a claim upon relief can be granted," Fed. R. Civ. 12 (b)(6) requires the court to conduct a limited inquiry, focusing not on "wheter a plaintiff will ultimately prevail but wheter the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 732, 236 (1974). When considering such a motion, a trial court "accept(s) as true all pled facts in the complaint and draw(s) all reasonable inferences in favor of plaintiffs." Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F. 3d 762, 771 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F. 3d 436, 441 (1st Cir. 2010).

## I. DOC Proper Defendant

The DOC is being sued in their official capacity for injuctive and declatory relief. Local goverments, municipal corporations and school boards are "persons" subject to liability under 42 USC s. 1983 for violating another person's federally protected rights, and thus not wholly immune from suit under s. 1983. Monell v. Dept. of Soc. Servs, (1978) 436 U.S. 658, 98 S. Ct 2018, 56 L Ed 2d 611, 17 BNA FEP Cas 873, 16 CCH EPD 8345 (criticized in Prince George's County v. Longtin (2011) 419 Md 450, 19 A3d 859) and criticized in Shields v Ill. Dept of Corr. (2014 CA7 Ill) 746 F. 3d 782, 88 FR Serv 3d 231.

## II. Violation of Free Exercise

Plaintiff after foregoing sincerity belief test by the defendant Silva's designee was approved to change his affiliation to Jewish. At the interview Plaintiff stated that he is a Hebrew believer in Jesus as the Messiah as stated in Verified Complaint #14 (c.v.#14). Plaintiff does not challenge the constitutionality of the DOC regulations but argues against the arbitrary action of the goverment. "the First amendment of the Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof..." The amendment was made binding on the states by the forteenth amendment." Everson v. Board of Education, 330 U.S. 1, 8 (1947). Where "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Turner v. Safley, 107 S. Ct 2254, 2262 (1987). This is the case here, the arbitrary of the goverment to deny the Plaintiff's first amendment right to freedom of religion as stated in the promulgated DOC regulation of religious exercise 103 CMR 471.00 creates a violation because no ready alternative exist.

The Plaintiff being denied the right to practice his faith in accordance to DOC regulation is substantially burdened in his religious exercise. To be singled out arbitrarily for disparate treatment is a constitutional violation. "For an essential attribute of the liberty protected by the

(4)

Constitution is the right to the same kind of treatment as the state provides to other similarly situated persons. A convicted felon, though he is properly placed in a disfavored class, retains this essential right." Hewitt v. Helms, 459 U.S. 460, 485-486 (STEVENS, J. dissenting) (footnote ommitted); see also Olim v. WakineKoma, 461 U.S. 238, 252 (1983) (MARSHALL, J. dissenting). Put another way, the retained liberty interest protected by the Constitution encompasses the right to be free from arbitrary govermental action affecting significant personal interest. see Wolff v. McDonell, 418 U.S. 539, 571-572 (1974) Prisoners have been held to enjoy substantial religious freedom under the first and fourteenth amendment. Cruz v Beto, 405 U.S. 319 (1972); Cooper v. Pate, 378 U.S. 546 (1964).

A.  Group Worship
V.C. #18 " Plaintiff as a practioner of messianic Judaism/ Judaeo christianity a Hebrew believer in Jesus tries not to be a burden due to lack of individualized programs and seeks to attend those services that have Jesus as part of their curriculum but is told he has to denounce his faith." Plaintiff was cleared by the IPS (Inner Perimeter Security) to attend services but was still denied V.C. #17. Coronel v. Paul, 316 F. Supp. 2d 868, 881 (D. Ariz. 2004) (holding that defendants would have the option of showing that a compelling interest required excluding him from those services.) The courts have allowed to require different

(5)

denominations or sects of the same religion to share services. Freeman v. Texas Dept. of Criminal Justice, 369 F.3d 854-61 (5th Cir 2004)(policy of providing combined services for five "major subgroups" did not violate first amendment despite objection of church of Christ adherents to being part of a "Christian non-catholic" group because it was "too ecumenical," used music in services, etc.) Maria v. Broaddus, No. 97 Civ. 8297, 2003 WL 21782633 (SD.NY July 31, 2003) The question centers on the sincerity of the inmate's religious motivation for desiring to attend services. In Greene v. Solano County Jail, the prison's policy to not allow maximum security prisoners access to group worship was held to substantially burden their religion under the first amendment and RLUIPA. 513 F.3d 982, 984 (9th Cir 2008).

## B. Chaplains

"Prisons are entitled to employ chaplains and need not employ chaplains of each and every faith to which prisoners may subscribe, but may not discriminate against minority faiths except to the extent required by the exigencies of prison administration.") Johnson-Bey v. Lane, 863 F.2d 1308, 1312 (7th Cir 1988). The "rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations." Hummel v. Donahue, 1:07-CV-1452 DFHTAB, 2008 WL 2518268

(6)

(S.D. Ind. June 19, 2008) (quoting Al-Alamin v. Gramley, 926 F. 2d 680, 686 (7th Cir 1991)). See C.V. # 15, 20, 21, 23, 83

C. Religious Diet - Kosher

Plaintiff avers more than mere dissastifaction with the way the Kosher diet is being improperly served. With all of the continous violations of being served uncooked meals, meals coming with missing items, being served unkosher items and being denied Kosher items. It is perfectly logical to conclude that Plaintiff is being substantially burdened. See C.V. # 24, 25, 30, 32, 34, 35, 36, 37, 38, 39, 40, 42, 43, 44, 45, 46, 47, 48, 56, 59, 61, 68, 70, 71, 72, 73, 74, 75, 76, 77, 78, 84. The water is also a problem often being brown and undrinkable.

A prisoner has a right to a diet consistent with his religious scruples. Ford v. McGinnis, 352 F. 3d 582, 587 (2d Cir 2003) jaccord Beerheid v. Suthers, 286 F. 3d 1179, 1185 (10th Cir. 2002); Jackson v. Mann, 196 F. 3d 316, 321 (2d Cir 1999) (holding right clearly established); McElyea v. Babbitt; 883 F. 2d 196, 198 (9th Cir 1987) (("Inmate ... have a right to be provided with food sufficient to sustain them in good health that satifies the dietary laws of their religion.") The goverment places a substantial burden on the exercise of an Inmate's religion by denying the Inmate a nutritias diet that he can consume while remaining faithful to his religious beliefs. Agrawal v. Briley, No. 02 C6807, 2003 WL 22839813*1 (N.D. Ill Nov. 25, 2003). The accomodations by the defendants were and are

(7)

insufficient because the religious diet is not consistent with the kosher menu cycle and 103 CMR 760.00 food service policy. The kosher diet is a religious service which falls under the duties and responsibilities of the chaplain in accordance to 103 CMR 471.07(5)(a). The institution chaplain shall have access to all areas of the institution in order to carry out his responsibilities. The only problem is that the superintendent is assigned by the commissioner the role of Rabbi in kosher dietary laws and denies the chaplain to perform his duty and responsibility. This causes deliberate indifference in how the kosher diet is served by the defendants. see CV.#70. On top of the violations plaintiff is subject to disciplinary action if he does not eat the meal served or is seen eating other items to make up for the deficiency. See new special diet request form attached as "Ex. 3A" punishes the plaintiff with disciplinary action and restitution if he is seen sinning. Plaintiff was made to adhere to new form even if he didn't sign or agree see memo attached as "EX 3B". Informal complaint attached as "Ex.3C" states that main reason for new policy is to make inmates pay for cost. Grievance attached as "EX 3D" was partially approved plaintiff argues establishment clause violations but no remedy was given. Grievance appeal attached as "Ex 3E" also offers no provision for remedy.

(8)

III. Eighth Amendment Violations

The Commissioner in appointing the Superintendant and his designees the defendants to take the reins of the Kosher diet, excluding the chaplain, take upon themselves the liability. The defendants have the direct involvement with all aspects of the Kosher diet. Food is one of the basic necessities of life protected by the Eighth Amendment. Knop v. Johnson, 667 F. Supp. 512, 525 (W.D. Mich. 1987) aff'd in pertinent part, 997 F 2d 996, 1000 (6th Cir 1992); accord Keenan v. Hall, 83 F. 3d 1083, 1091 (9th Cir 1996), amended, 135 F. 3d 1318 (9th Cir 1998) The defendants have used the Kosher diet as a avenue to to impose punishment on the Plaintiff. Especially when Plaintiff is in segregation where living circumstances are more atypical and significantly harsher compared to general population. Deprivation of adequate food is a "form of corporal punishment." Cooper v. Sheriff, Lubbock County, Texas; 929 F. 2d 1078, 1083-84 (5th Cir 1991) Deprivation of food for any substantial period of time can violate Constitution.

B. Deliberate Indifference to Serious Medical Needs.

The Plaintiff was sentenced to the DOC in 2016 needing and wanting rehabilitative and mental health services due to emotional distress was denied both. Mental health refused its services unless Plaintiff tried to kill himself. V.C #21. Refusal of treatment

(9)

unless the prisoner complies with a seriously unreasonable condition constitutes deliberate indifference. That is why Plaintiff desperately seeks to speak to a chaplain for counseling, pastoral services and spiritual guidance which is being constantly being denied. This has caused Plaintiff's mental health to deterioate and various mental breakdowns. Plaintiff has been diagnosed with a serious Mental Illness ("SMI") and treatment plans are still inadequate.

The denial to the religious services already allowed by the DOC regulation is still a problem which causes emotional distress. Even the physical injuries have been a result of Plaintiff being denied to go to religious services because if Plaintiff would of been allowed to go he would of not been forced into a altercation which resulted in Plaintiff being exposed to chemical agents. Then due to anti-semitism as evidence by the blaspheme of guards was denied medical treatment afterwards.

C. Emotional distress

As a result of ongoing constitutional violations Plaintiff is now diagnosed and labeled with SMI by mental health proffesionals. This is the consequence of failure to treat illness or injury, both immediate and longer term or prospective. The Plaintiff's many

(10)

pleas for help to mental health especially when being subjected to corporal punishments in Segregation went unheeded. C.V.#71. see e.g., Mary & Crystal v. Ramsden, 635 F.2d 590 (7th Cir 1980) ($2,400 for 29 days, $1,600 for 19 days, respectively, in isolation, plus $2,900 for psychologist refusal to see inmate in emotional distress due to cruel and unusual conditions, not excessive). Such damages are not presumed but they are easily proved by testimony "showing the nature and circumstances of the wrong and its effects on the plaintiff." Carey v. Piphus, 435 U.S 247, 263-64 (1978).

D. Physical Injuries

C.V.#19 "Plaintiff was denied medical attention where nurse and officer seen plaintiff in the SMU suffering the after-effects of the chemical agents, coughing up phlegm and having a high fever. Plaintiff was denied tylenol during medical round," per policy of defendant Silva," and told to sign up for sick call. Plaintiff was never seen by medical staff even though he suffered the symptoms for several days." The whole time officers influenced the nurses due to their anti-semitism and blaspheme. This conduct clearly denied and delayed access to treatment. C.V.#22 " on 2-1-17 plaintiff was transfered to the RB at MCI Norfolk. Medical staff at Norfolk diagnosed plaintiff with Asthma due to suffering a anti-respiratory infection. Plaintiff has shortness of breath,

(11)

is put on medication, suffers chest pains." Reeves v. Wallington, 2007 WL 1016979 * 2 (E.D. Mich., March 29, 2007) (holding standard met by shortness of breath, chest pain, hospitalization for observation to rule out Myocardial infraction following delay in receiving medication and exposure to chemical agents), subsequent Determination, 2007 WL 230 0798 (E.D. Mitch., Aug. 7 2007) Boles V. Dansdill, 2007 WL 2770473 * 21 (D. Colo., Sept. 20, 2007 (holding allegation that denial of medical care made plaintiff "physically ill" satisfied physical injury at pleading stage.

Also in the denial of adequate food by not serving the Kosher diet properly and consistent with 760.00 food service policy the plaintiff was seen by medical staff at DDU as a consequence of the Kosher diet violations. Plaintiff suffered weight loss, abdominal pain, nausea, constipation due to the substantial burden on his free exercise. Williams V Humphreys, 2005 WL 490 5109, * 7 (S.D. Ga., Sept. 13, 2005) (holding allegation of 12 pounds weight loss, abdominal pain and nausea resulting from denial of pork subtitute at meals sufficiently alleged physical injury).

IV. Claims under Mass. Declaration of Rights
"The SJC has never held that there is a right of action to enforce the Declaration of Rights. It did suggest 35 yrs ago, in dicta, that such a right "may" be available.

(12)

see Phillips v. Youth Dev. program, inc, 390 Mass. 652, 657-58 (1983) [stating that 'a State may not violate a person's constitutional rights and then fairly assert that no redress can be had because the State has not provided a statutory of enforcing those rights")) " Many years later, the Mass. App. Ct, in dicta, in an unpublished opinion, noted that 'because Mass. has not definitely determined wheter a cause of action can be brought based on solely on the Declaration of Rights, we must look to the federal standard in reviewing the plaintiff's claim.' Cormier v. City of Lynn, 91 Mass. App. Ct. 1101 (2017). But that opinion had simply assumed that such an action could be brought, and then concluded that no constitutional violation had occured." Pimental v. City of Methuen, 323 F. Supp. 3d 255, 273-774 (1st cir 2018)

Here there are clear constitutional violations but more importantly there has been fashioned statutory avenues for enforcement. The controversy put forth by counsel that no cause of action may be brought solely based on the Declaration of Rights need not be considered in this case. See Martino v. Hogan, 37 Mass. App. Ct 710, 720 (1994). The following are statutory authority for the rights claimed to be violated. Title XVIII M.G.L.c 127 s. 36 B visits by clergy, 36 C in person visitation of inmates, 38 e - Grievance system and resolution, 88 - religious exercise, 89 - sabbath schools and

(13)

and other instruction. State law may create enforceable liberty interest in the prison setting. Here we can find that a liberty interest has been "created" by the Commonwealth's visitation, religious, and grievance regulations and policy. A person is equally protected even when the liberty itself is a statutory creation of the state. The touchstone of due process is protection of the individual against arbitrary action of government, Dent V. West Virginia, 129 US 114, 123 (1889). As in Sandin v. Conner, 515 U.S. 472 (1995) the court reaffirmed that the "liberty" protected by the Fourteenth Amendment includes interest that the state may create." MGLC 124 ss 1 outlines the duties of the Commissioner, to establish and enforce standards for all corr. facilities. Standards that the defendant Turco did not meet in this case.

V. RLUIPA

a. Administrative Remedies exhausted/claims preserved.

   Pursuant to 103 CMR 491.11, Inmate grievances, religious practices, are not grievable under the policy. The Plaintiff did file many grievances since the nature of the problem was not a new request but a violation of existing DOC regulation and policy. The religious request form is to seek religious practice, program, group or religious item not otherwise approved. However as a result of informal complaint (Ex2A) Plaintiff filed the Inmate Religious Request Form (Ex2B) exhausting the process outlined in

(14)

103 CMR 471.08 (10)(a),(d),(g) being denied by the
RSRC and commissioner's office (Ex 20). This clearly
refutes counsel's claim that plaintiff's claims are
barred from suit.

b. Request and Denials

Counsel for defendants states that plaintiff first
claims alleged RLUPA violation on lack of variety
of the kosher diet this simply is untrue. On Ex. 2B
plaintiff request the following:

1. "observe Jewish holy days properly and without
discrimination including but not limited to passover, weekly
sabbath and kosher diet."

2. "Allow chaplain responsibility to manage religious
activities (religious diets, services, ceremonies, and meetings)"
Request #1 was denied by not recognizing Judaeo-
christianity/messianic Judaism as a religion in spite
of evidence submitted. Request #2 states in the
denial " the superintendant oversees the religious diets
therefore this request is denied."
This statement clearly places defendants Silva and
DeMoura as responsible for the undue burden on his
religious exercise. The defendant Turco knowing about
their conduct refused to correct the violations. The
goverment may substantially burden an inmate's
exercise of religion only if the goverment can show
that its reason for doing so is of the highest

(15)

importance. Here the defendants cannot show that any compelling govermental interest exist to excuse any of the violations. Aside from the affirmative defense that plaintiff did not preserve claims for suit which has been debunked they simply have no excuse.

## C. Observance of Religious Holy Days

Defendants cannot state any compelling reason for denying plaintiff the observance of Passover properly. Cv.#53-61. Defendant Silva partially approved grievance but no remedy was provided for the violation. The Holy Sabbath a weekly observance has been denied to the plaintiff. The motivation for the violations and denial is cost. Courts have held that controlling expenses and preventing increased cost do not constitute compelling state interest. See O centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 342 F.3d 1170, 1186 (10th cir 2003) (goverment cannot satisfy strict scrutinity by citing an "increased need for resources")

## D. Diplomatic Relations with Vatican State.

However, the benefits that may be available to the Vatican's representatives are available only because... the Vatican exercises terretorial sovereignty over a small geographical area." American United for Separ. of Church v. Reagan, 786 F.2d 194, 201 (3rd cir 1986). On Ex2B religious request # 6 plaintiff request

(16)

to "Allow chaplain facilitate and monitor phone calls to meet and obtain specific program needs (diplomatic relation pursuant 103 CMR 467.07(3) Pope is 'foreign official' under 18 USCS §112 since he is head and director of Vatican State, independant country. United States v. Vazquez (1989, CA5 Tex) 867 F.2d 872)."

The request was denied the reason being that chaplains cannot facilitate and monitor phone calls. This substantially burdens the Plaintiff's religious exercise because it is the duty and responsibility of the institution chaplain to communicate with clergy especially those that would volunteer or visit a inmate. This is in complete disregard to 103 CMR 471.07 and there is no other alternative available. see also 471.06 (c)

E  BOOKS

While awaiting disciplinary hearing at Ten block in MCI cedar Junction Plaintiff was a transient inmate and only allowed 1 religious book. "Pursuant to 103 CMR 403.10(4) transient inmates are entitled to have ten religious books" Hudson v. Marshall, 2002 WL 389541. The defendant DeMoura made a policy in the Ten block handbook that only limits inmates to 1 religious book. Grievances have been filed and appeals but was denied any remedy.

(17)

II. No Qualified Immunity

The many violations of the defendants violate the Plaintiffs constitutional rights. Their actions reflect reckless and callous indifference to the rights of the Plaintiff. The laws and regulations of the concerned abridged rights have been well established for a very long time and any competent official should have known.

Conclusion

For the above stated reasons this Honorable court should find merit in Plaintiff's complaint and move foward with litigation.

Date:                          Respectfully Submitted,
                               S/ ~~
                               Julio B. Leiva (pro-se)
                               P.O. Box 100
                               S. Walpole, MA 02071

(18)

2B

## Inmate Religious Services Request Form-Page 1 of 2

Name: _Julio Leiva_____    Commitment Number (#) _W107572_

Date: _July_____

1. **What is the official name of the faith group?**

   Roman Hebrew/Hebrew catholics - Judaeo Christian
   (ex. Apostle Paul/Rabbi Shaui was a Jewish Roman citizen)

2. **Who is the head of the faith group?**

   Bishop of Rome; Pope

3. **What is the address and telephone number of the faith group in Massachusetts or the U.S.?**

   International Prisoner Transfer unit of United States
   Bereau) OF Prisons of U.S. Dept of Justice
   (  ) Vatican City State        Secretariat of State
        00120              Head of the Secretariat of State

4. **Does the faith group have ministers or teachers?**      Section for Relations with
                                                              State, Apostolic Palace

   Yes ✓                  No____

5. **Are the ministers available to visit incarcerated members of the faith group?**

   Yes ✓                  No____

6. **Are there religious holydays to be observed?**

   Yes ✓                  No____

7. **If so, what religious practices are necessary for the observance?**

   Jewish Holy days and catholic especially
   Passover and weekly Sabbath (see Mass. Dept of Corr. Religious handbook Sec II pgs
                                                                        39, 50-53, Sec III pg 66, 75

8. **Are there time and space requirements for the faith? If so, please explain?**

   Shabat service/Eucharist

9. **Is the religion open to all inmates?**

   Yes ✓                  No____

10. **What is your specific request? The Religious Services Review Committee will only review requests listed in the space provided below on page 2.**

**Please number each request. (Please provide reference material, which would be useful for researching this group).**

1. Observe Jewish Holy days properly and without discrimination including but not limited to Passover, weekly sabbath and Kosher diet.

2. Allow chaplain responsibility to manage religious activities (religious diets, services, ceremonies, and meetings)

3. Allow Pastoral care and counseling

4. Allow Pastoral care and counseling from representative in community.

5. Pastoral visits.

6. Allow chaplain facilitate and monitor telephone calls to meet and obtain specific program needs. (diplomatic relation pursuant 103 CMR 467.07 (3) Pope is "foreign official" under 18 USC §112 since he is head and director of Vatican state, independant country. United states V. Vazquez (1989; CA5 Tex) 867 F. 2d 872)

7. Allow program on church history to teach about different saints and Matyrs around the world due to diversity of ethnicity of Romans (Christians).

8. Allow for Roman Hebrew culture to be expressed in it's religious beliefs. where many adherents to the faith are made up of many ethnicities mainly for ex. A Puerto Rican is made up of 3 European/ native American/African-Hebrew.

9. Allow to purchase Icon or relic or medallion of patron saint Emperor Constantine the Great

10. Allow the purchase for annointing oil/olive oil for prayers

11. Allow to purchase religious items under Jedaism-Catholic + turban

Inmate Property, 103 CMR 403.00, et. seq.   Attachment A

104

# Religious Services Request Form

Institution: **SBCC**                            Date of Request: **July 30, 2018**

Inmate Name: **Julio Leiva**                    Number: **W107572**

Request (Be specific: What was requested? When does inmate want it? Where does inmate want to utilize it?): 1. Observe Jewish Holy days properly and without discrimmation including but not limited to Passover, Weekly Sabbath and Kosher diet. 2. Allow Chaplain reponsibility to manage religious activities (religious diets, services, ceremonies and meetings) 3. Allow Pastoral care and counseling 4. Allow Pastoral care and counseling from representative in community 5. Pastoral visits 6. Allow Chaplain facilitate and monitor telephone calls to meet and obtain specific needs (diplomatic relation pursuant 103 CMR 462.07 (3) Pope is a "Foreign Official" under 18 USCS 112 since he is head and director of vatican state, independent country. United States v. Vasquez (1989, CASTex) 867 F2d 872)7. Allow program on church history to teach about different saints and matyrs around the world due to diversity of ethnicity of Romans (Christians) 8. Allow Roman hebrew culture to be expressed in its religious beliefs, where many adherants to the faith are madeup of many ethnicities mainly for ex. A Puerto Rican is made of 3 European/ Native American /African -Hebrew 9. Allow to purchase Icon or relic or medallion of Patron saint Emperor Constantine the Great 10. Allow the purchase for annointing oil/olive oil for prayers 11. Allow to purchase religious items under Judaism-Catholic & Turban

Religion: Roman Hebrew/Hebrew Catholics-Judaeo Christian

Please attach inmate's completed Religions Request Questionnaire Form.

Institution recommendation: Approve:        Deny: **X**

If recommendation is to deny, please give the following information:

1.      Clearly articulate the security reason(s) for this recommendation (Be specific):
        please see attached

2.      What alternatives were asked for or could be offered?
        please see attached

3.      Was anyone contacted outside of the institution concerning this request?  Who?
        Religious Handbook

Signature of Superintendent                                                              Date

Please send completed form to the Religions Services Review Committee

Attachment B

2D

Response to Julio Leiva's numerous requests to the Religious Service Committee:

1. The religion of Roman Hebrew/Hebrew Catholics-Judaeo Christian is not a recognized Religion per the Religious Handbook therefore this request is DENIED

2. The Superintendent oversees the religious diets therefore this request is DENIED. However, the Chaplain does oversee services, ceremonies and meetings.

3. Pastoral care and counseling is already allowed.

4. Pastoral care and counseling from the community is allowed if brought in on regularly scheduled visits, in the visiting room.

5. Pastoral visits are approved on regularly scheduled visits in the visiting room.

6. Chaplains cannot facilitate and monitor inmate phone calls, therefore this is DENIED.

7. A volunteer would need to be secured to teach Roman Hebrew history

8. A volunteer would need to be secured to teach Roman Hebrew culture.

9. Keefe would need to have the approved relic or medallion, therefore this request is DENIED.

10. Anointing Oil/Olive oil are not approved items, therefor this request is DENIED

11. A Turban is not an approved item, therefore this request is DENIED

1 A

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION

### INMATE GRIEVANCE FORM
### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| | | | |
|---|---|---|---|
| Name LEIVA JULIO B | Grievance# 101584 | Institution SOUZA-BARANOWSKI CORRECTIONAL | |
| Commit No. W107572 | Housing J3 | Date Of Incident 20180728 | Date Of Grievance 20180818 |

**Informal filed**  Yes

**Complaint**  The Kosher trays on this day (7-28-18) came with missing items compared to the regular inmate diet which was served Kosher items and they received it with even more items while I being on the Kosher diet did not even receive all of what was supposed to be served with the Kosher meal per food policy. To say that the inmate population did not get serve Kosher items is a outright denial when just this week we all got served the peanut butter and jelly packets that are Kosher. The denial to serve the Kosher diet in accordance to regulation places a undue burden on my religious excercises especially creating a substantial burden depriving me of Food when in segregation

**Remedy Requested**  1.Serve the Kosher diet properly
2. And or provide monetary compesation

**Staff Recipient**  Tocci Thomas M  CO II

**Staff Involved**

**Signature**

## RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received** 20180827    **Decision Date** 20180928

**Signature**  Tocci Thomas M  CO II

**Final Decision**  PARTIAL APPROVAL

**Decision**  Grievance is partially approved the Food Service Department at SBCC follows all aspects of the kosher religious diet per DOC Policy and you will not receive any monetary compensation.

**Signature**                                                    **Date**

Denied grievances may be appealed to the Superintendent within 10 working days of Institutional Grievance Coordinators decision.

## INMATE RECEIPT

| | | | |
|---|---|---|---|
| Name | LEIVA JULIO B | Institution | SOUZA-BARANOWSKI CORRECTIONAL |
| Commit No. | W107572 | Grievance# 101584   Date Received | 20180827 |

**Signature.**  Tocci Thomas M  CO II

37

1 B

PB)K

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION

### INMATE GRIEVANCE FORM
### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| Name | LEIVA JULIO B | Grievance# | 101582 | Institution | SOUZA-BARANOWSKI CORRECTIONAL |
|------|---------------|------------|--------|-------------|-------------------------------|

| Commit No. | W107572 | Housing J2 | | Date Of Incident | 20180729 | Date Of Grievance | 20180818 |
|------------|---------|------------|--|------------------|----------|-------------------|----------|

**Informal filed** Yes

**Complaint** The situation with the Kosher diet still persist and is not rectified on 7-29-18 I was served non Kosher elbow salad from the regular inmate diet the item that should have been served was the Kosher cole slaw which staff stated is on hand but was not served and when the block officer called to the kitchen staff Lt. Barthell he stated that is all we are getting. I just don't understand why can't the kitchen staff not follow DOC Regulation in accordance to 760 food service policy this is a ongoing issues that affects me in regular population and even more in segregation.

**Remedy Requested**
1. Serve the Kosher diet properly
2. And or provide monetary compesation

**Staff Recipient** Tocci Thomas M CO II

**Staff Involved** Barthel Brian J CO I

**Signature**

## RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

| Date Received | 20180827 | Decision Date | 20180928 |
|---------------|----------|---------------|----------|

**Signature** Tocci Thomas M CO II

**Final Decision** PARTIAL APPROVAL

**Decision** Grievance is partially approved the Food Service Department at SBCC follows all aspects of the kosher religious diet per DOC Policy and you will not receive any monetary compensation.

**Signature** _____ **Date** _____

Denied grievances may be appealed to the Superintendent within 10 working days of Institutional Grievance Coordinators decision.

## INMATE RECEIPT

| Name | LEIVA JULIO B | Institution | SOUZA-BARANOWSKI CORRECTIONAL |
|------|---------------|-------------|-------------------------------|

| Commit No. | W107572 | Grievance# | 101582 | Date Received | 20180827 |
|------------|---------|------------|--------|---------------|----------|

**Signature** Tocci Thomas M CO II

Sara Fisher,                                    12-16-18

My name is Julio Leiva# W107572 housed in L-3. I am writting concerning the upcoming Holy Day of Christmas. I want to participate in it and this letter is a reminder of that desire. I am a Hebrew believer in Jesus as the Messiah and this Holy day is a very important one for me a Roman Hebrew Israelite. I was denied to participate last year and was actually given uncooked food. I have even been denied to celebrate thanksgiving as if somehow I am not a natural born American. This request is not unreasonable seeing that Kosher Items are served to the regular population the rest of the meal can be ritual Holy days foods. If this request is not granted I will be taking a regular line meal because the Kosher diet is not served properly on a daily basis and it is not fair that everyone gets to celebrate a Holy day I hold dear. Thank you for your time and attention to this matter.

Sincerly,

C. C j5



*The Commonwealth of Massachusetts*
*Executive Office of Public Safety & Security*
*Department of Correction*
*Souza-Baranowski Correctional Center*
*P.O. Box 8000*
*Shirley, Massachusetts 01464*

**Charles D. Baker**
*Governor*

**Karyn Polito**
*Lieutenant Governor*

**Daniel Bennett**
*Secretary*

*Office #(978) 514-6500*
*Fax #(978) 514-6529*
*www.mass.gov/doc*

**Carol A. Mici**
*Acting Commissioner*

**John A. O'Malley**
*Chief of Staff*

**Paul Dietl**
**Christopher M. Fallon**
**Michael G. Grant**
**Paul J. Henderson**
*Deputy Commissioners*

**Steven Silva**
*Superintendent*

December 20, 2018

Julio Leiva W107572
Souza-Baranowski Correctional Center (L3)
P.O. Box 8000
Shirley, MA 01464

Dear Mr.Salansky,

I am in receipt of your letter, received 12/18/18, regarding your interest in refusing your Kosher Diet only on Christmas and other pre-determined holidays and receiving the main line meal as a substitute on these specific days. At this time it is required for any individual on a special diet without review by the Religious Services Committee, to take the provided special diet meal. In your situation, if you do not take the special diet meal, then there will be disciplinary action and the possibility of restitution.

In order to make a request for an alternative religious meal on these days, it is required for you to submit a religious service review committee request form. Your statements regarding your individual religious practices and importance of the Christmas holiday have been heard and therefore I am attaching a religious services request form so that your individual needs can be reviewed at the next religious services committee meeting. Please provide in detail what religious diet you currently receive, what you are requesting and why it is important to you and the religion you are currently practicing. Example: If you want the ability to put your special diet on hold and access the main line on specific days of the year please provide all details that warrant the accomdations.

Please complete the attached religious request form and submit to the Officer of Director of treatment if you wish to have your request reviewed. Your request will go through the process outlined in the religious services handbook and it will be submitted to the religious services committee accordingly. Until you have an approval from the religious services committee, you will be expected to take the Kosher meal as outlines in the religious services handbook. I trust this information addresses all of your concerns.

Sincerely,

*M.Fish DOT*

Sara Fisher
Director of Treatment

LL/cb

Attachment A

## Massachusetts Department of Correction
## Special Diet Request Form

Institution: _____    Date of Request: _____

Inmate Name: _____    Commitment Number: _____

I hereby request authorization to receive a special diet (Kosher/Halal/Vegetarian/Vegan).  I agree to comply with the special diet requirements.  I understand that, if I am observed accessing any part of a meal from the mainline menu or fail to access a meal, a disciplinary report will be issued and I may be subject to sanctions which may include restitution for the cost of each missed meal.

I understand that I must provide a written request in the space below stating what my religion is and what dietary restrictions apply to my religion that require my placement on the special diet list, in accordance with 103 CMR 471.08(5).

Religion: _____

Clearly explain what religious dietary restrictions require your placement on the special diet list:

_____

_____

Signature of Inmate          Commitment#          Date

_____

Receipt by Superintendent's Designee          Date

_____

Recommendation by Superintendent's Designee          Date

_____

Superintendent's Signature          Date

October 2018

3B




**The Commonwealth of Massachusetts**
**Executive Office of Public Safety & Security**
**Department of Correction**
**Souza-Baranowski Correctional Center**
**P.O. Box 8000**
**Shirley, Massachusetts  01464**

**Charles D. Baker**
*Governor*

**Karyn Polito**
*Lieutenant Governor*

**Thomas A. Turco, III**
*Secretary*

*Office #(978) 514-6500*
*Fax #(978) 514-6529*
*www.mass.gov/doc*

**Carol Mici**
*Acting Commissioner*
**John A. O'Malley**
*Chief of Staff*

**Paul Dietl**
**Christopher M. Fallon**
**Michael G. Grant**
**Paul J. Henderson**
*Deputy Commissioners*

**Steven Silva**
*Superintendent*

December 18, 2018

Leiva, Julio  W107572
Souza-Baranowski Correctional Center (L3)
P.O. Box 8000
Shirley, MA 01464

Dear Mr. Leiva, Julio,

Please be advised the Department of Correction Central Headquarters has determined it is not necessary for inmates already receiving a Special Diet to fill out & sign the updated Special Diet Request Form, and that the memo to all inmates was and is sufficient notice to put all inmates, who already receive a special religious diet, on notice that their failure to take their special religious meals will now result in Disciplinary Report being issued and possibly monetary sanctions imposed for the cost of the prepared meal.

If you wish to be removed from your religious diet, you must provide a written letter to the D.O.T. requesting such.

Thank you for your time and attention.

Sincerely,

Sara Fisher
Director of Treatment

SF/cb

cc: File

L3-10   10

3C

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INFORMAL COMPLAINT FORM

W107572

RECEIVED
DEC 1 4 2018
BY: 1627

Attachment I

Inmate Name: Julio Leiva          Commitment # W107572     Incident Date 12-4-18
Institution  SBCC          Housing Unit  L-3

---

CHECK OFF AREA OF CONCERN  (one issue per form allowed)

___ HOUSING ASSIGNMENT/STATUS      ___ LAUNDRY          ___ PROGRAMS      ___ MAIL      ___ FOOD

___ CLOTHING/LINEN EXCHANGE        ✓ RELIGION          ___ PROPERTY      ___ VISITS

___ LEGAL EXCHANGE                 ___ LIBRARY          ___ PHONE         ___ OTHER: _____

---

State completely, but briefly, the single issue of concern and your requested resolution

On Dec 4 I was issued a memo informing me that Special Diet Form has been updated. The updates to the form and policy now include punishments for breaking dietary Kosher laws. I have been receiving Kosher food since 2016 and it never has been served properly and now I am being regulated in my religious practice by the government and told I am subject to disciplinary action if am see sinning. The true meaning of church and state is clearly defined in that the government cannot intrude and dictate religious affairs especially of those is when there is no penological interest in doing so. The meals are already paid by me the debtor in accordance to Title XVIII, how about the Doc stop restricting religious exercise by denying what is due in accordance to CNR

List any previous steps you have taken to resolve your concern

Talked to Dot during staff access

---

(Use other side of page if more space is needed)

Inmate Signature _____          Date 12-8-18

*Note: If you follow instructions in preparing your request, it can be addressed more readily.  Your complaint will be reviewed and replied to within ten (10) business days from the date of receipt.*

---

DO NOT WRITE BELOW THIS LINE (Reserved for Staff Response)

Received By _____          Date Received _____

## DECISION

Resolution:     Granted____  Partially Granted____  Denied  X   Alternate Resolution Offered____  N/A____

Comments Implementation of the new procedure for Special diets was deemed necessary to curtail the waste of religious meals that cost the department more money to cook & prepare. It was determined that the process does not substantially burden an inmate's faith. →

Decision By Sara Fish          Date 12/21/18

*Denied informal complaints may be appealed to the Institution Grievance Coordinator within ten (10) business days.

**An inmate shall not be required to submit a step 1 informal complaint form prior to filing an emergency grievance, allegations of staff misconduct, or for allegations of sexual assault/abuse.

MAILED
DEC 24 2018

12-24-18          GC j5          1

Rather, inmates on the Special Religious diet are now presented with a choice to either take their special religious meal or face disciplinary consequences which may include restitution sanctions.



# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION

### INMATE GRIEVANCE FORM
#### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

Name LEIVA JULIO B     Grievance# 103129   Institution SOUZA-BARANOWSKI CORRECTIONAL

Commit No. W107572    Housing L3      Date Of Incident 20181204    Date Of Grievance 20190102

Informal filed   Yes

Complaint The new policy for the religious diet punishes with disciplinary action and restitution if a meal is not taken basically if I am seen breaking religious dietary laws. It is said that this new policy does not substantially burden an inmates faith and that we are now presented with a choice to take the religious meal or face disciplinary consequences. I argue especially when I am already substantially burden in my exercise due to the kosher diet not being served properly and in accordance to 760 food policy and comes with a shortage of items daily. So in fact we don't have a choice at all I am just being persecuted for practicing my faith and this policy serves as a coercive means to get me off the diet. I have been on kosher diet since 2016 and hardly ever refused a meal but when breakfast comes short of mainline meals are stacked with food and the temptation to sin is very appealing especially when in segregation so now the policy makes it that if I am seen sinning I will be punished by the state. This violates the establishment clause of seperation of church and state and it serves no penological interest because all my boarding fees are paid by me debtor in accordance to title 18 chap 126 so it does not cost any extra money when my account is already charged where the state is the fiduciary of my cestui qui trust

Remedy Requested
1. Served the Kosher diet properly and stop denying items
2. Uphold the Establishment clause
3. and or Provide monetary compesation

Staff Recipient   Tocci Thomas M   CO II

Staff Involved

Signature

---

## RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

Date Received 20190114    Decision Date 20190118

Signature   Tocci Thomas M   CO II

Final Decision   PARTIAL APPROVAL

Decision Grievance is partially approved all religious diets are served in accordance with DOC policies 760 & 761. Also CMR 471 states:
(5)   Special Religious Diets.
(a)   Inmates whose religion places restrictions on diets should be permitted access to a special religious diet. However, in limited situations where the institution/Department is not able to meet all aspects of a special religious diet request due to security and/or facility limitations, the institution shall

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION

| | |
|---|---|
| Name  LEIVA JULIO B | Institution SOUZA-BARANOWSKI CORRECTIONAL |

| | | | | | |
|---|---|---|---|---|---|
| Commit No. W107572 | Housing  L3 | Date Of Incident | 20181204 | Date Of Grievance | 20190102 |

## RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

make every effort to provide a reasonable accommodation to the diet request. It also states that inmates must sign for these meals and any forfeiture of the meal or taking of a main line meal will result in disciplinary action.  You will not be provided with monetary compensation.

Signature _____   Date _____

Denied grievances may be appealed to the Superintendent within 10 working days of Institutional Grievance Coordinators decision.

## INMATE RECEIPT

| | | | | |
|---|---|---|---|---|
| Name | LEIVA JULIO B | | Institution | SOUZA-BARANOWSKI CORRECTIONAL |
| Commit No. | W107572 | Grievance#  103129 | Date Received | 20190114 |
| Signature. | Tocci Thomas M   CO II | | | |

3E

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

| | | | |
|---|---|---|---|
| **Commit Name:** | LEIVA JULIO B | **Commit #:** | W107572 |
| **Grievance #:** | 103197 | **Date Of Grievance:** | 20190104 |
| **Institution:** | MCI CEDAR JUNCTION | **Housing:** | L3 |
| **Appeal Date:** | 20190123 | **Appeal Received Date:** | 20190125 |
| **Current Institution:** | MCI CEDAR JUNCTION | **Current Housing:** | DDU |

**Appeal**

The new policy for the religious diet goes against the establishment clause because it makes the inmate liable to be punished for sinning the policy before this new one was fair because if inmate on the diet was seen breaking the policy he would get written up and if he receives 3 written reports in a month he would lose access to the diet for 6 months but now if I am seen accessing the mainline tray or if I even refuse my meal period I am now threatened with disciplinary action and restitution this punishment places undue burden on my religious practice especially when I am already being substantially burden b In my religious exercise due to the kosher diet not being served properly in accordance to 760 Food Policy. The K-menu cycle is not even followed. The problem arises not only in the policy that goes against the establishment clause but the way that the diet itself is served because it leaves me with no choice but the following 1. eat the kosher with the shortages and be hungry and violate the kosher diet because it is served along with unkosher items. 2, eat a regular tray which in the segregation is double portion and be full. - So see there is no choice because in either scenario I break kosher law but In the second I don't have to suffer hunger because I want to practice my religious belief. The CMR does not mention any restitution for the meal where I the debtor already paid all boarding fees in accordance to Title 18 Chapter 126 so to charge me restitution would be to charge the account twice

**Remedy Requested**

1. Serve the kosher diet properly
2. Uphold the establishment clause
3. and or provide monetary compensation

**Staff Recipient**

Tocci Thomas M   CO II

**Signature** _____

## DECISION BY SUPERINTENDENT

**Appeal Received Date**   20190125      **Decision Date**          **Decision**

**Decision By**

**Reasons**

**Signature** _____   **Date** _____

## INMATE RECEIPT

| | | | |
|---|---|---|---|
| **Inmate's Name** | LEIVA JULIO B | **Institution** | MCI CEDAR JUNCTION |
| **Number** | W107572 | **Appeal Received Date** | 20190125 |
| **Staff Recipient** | Tocci Thomas M   CO II | | |

**Superintendent's Signature** _____

# EXHIBIT C

# EXHIBIT C

Commonwealth of Massachusetts

Suffolk, ss                                    Superior Court Dept.
                                               Docket No. 1884CV03517

Julio B. Leiva

            v

Turco, et al

                    Plaintiff's Motion to Respond
                    to Defendants Burnette and
                    Lt. Foley's Motion to Dismiss

    Now comes the Plaintiff, Julio B. Leiva (pro-se), in
the above-entitled matter and moves this Honorable
Court to grant motion to respond to defendants
Burnette and Lt. Foley's motion to dismiss in
order to move foward with litigation and Justice.
Attached is memorandum in support of this motion.

WHEREFORE, Plaintiff prays this Honorable Court
grant him this motion.

Date:                          Respectfully Submitted,
                               S/
                               Julio B. Leiva (pro-se)
                               P.O. Box 100
                               S. Walpole, MA 02071

                                               over →

Commonwealth of Massachusetts

Suffolk, ss                                      Superior Court Dept.
                                                 Docket No. 1884CV03517

Julio B. Leiva
              V
Turco, et al

## Proof of Service

The undersigned certifies that I did cause true copies of the following documents:
1. Motion to respond to defendants motion to dismiss
2. Memorandum in support of Motion to respond to motion to dismiss
to the defendants via first class mail to their attorney Nancy Ankers White last known address/place of business: 70 Franklin St., Suite 600, Boston, MA 02110   on

Signed Under The Pains And Penalties of Perjury on the ___ Day of _____ In The Year of Our Lord, 2019

Date:                                            Sincerly,

Commonwealth of Massachusetts

Suffolk, ss.                                   Superior Court Dept.
                                              Docket No. 1884CV03517

Julio B. Leiva
            v
Turco, et al

### Plaintiff's Memorandum in Support of Motion to Respond In opposition to Defendants Burnette and Lt. Foley's Motion to Dismiss

The Plaintiff, Julio B. Leiva (pro-se), in the above entitled matter moves this Honorable Court to go foward with litigation against defendants Burnette and Lt. Foley due to the following facts stated below.

1. After Plaintiff was allowed by the Court to serve defendants by first class mail on 12/14/18 plaintiff placed all seven individual copies of complaint in inmate maibag on 12/21/18.

2. The Plaintiff only placed actual stamps on defendant Turco's envelope for the rest of the six defendants plaintiff filled out a inmate charge slip for postage.

3. On 12/26/18 the Treasurer at SBCC took out the funds for the postage out of the Plaintiff's Inmate account as shown in the "Inmate transaction report" attached as "Exhibit A".

4. On 1/2/19 The court did in fact receive affidavit of service from Plaintiff

The defendants Burnette and Lt. Foley cannot hope to escape responsibility under false pretenses, as they do in grievances, by claiming Plaintiff failed to effect timely service. The defense must fail unless they prove a conspiracy against the SBCC staff, DOC, and the U.S. postal office. The evidence in EX A is clear. They cannot answer the question of why the rest of the defendants received the complaint and they did not even when majority of defendants are located at the same address. It is perfectly logical to conclude that they try to insult the intelligence of the court by lying to escape liability.

Plaintiff prays his motion is granted and litigation moves forward.

Date:

Respectfully Submitted,
s/ Julio
Julio B. Leiva (pro-se)
P.O. Box 100, S. Walpole, 02071

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### Inmate Transaction Report

"Exhibit A"

Date :   20190123 08:10

Page :   5

| Commit# : | W107572 | | | | SOUZA-BARANOWSKI CORRECTIONAL |
|---|---|---|---|---|---|
| Name   : | LEIVA, JULIO, B, | | | Statement From | 20181223 |
| Inst   : | SOUZA-BARANOWSKI CORRECTIONAL | | | To | 20190123 |
| Block  : | L3 | | | | |
| Cell/Bed : | 10 /A | | | | |

| Transaction Date | Type | Receipt # | Check No | Inst Name | Notes | Personal Income | Personal Expense | Savings Income | Savings Expense |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Total Transaction before this Period : | $6,269.88 | $6,235.52 | $26.00 | $26.00 |
| 20181226 09:03 | IC - Transfer from Inmate to Club A/c | 35234754 | | SBCC | ~6@3.10=18.60~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $18.60 | $0.00 | $0.00 |
| 20181228 22:30 | CN - Canteen | 35251808 | | SBCC | ~Canteen Date : 20181228 | $0.00 | $15.00 | $0.00 | $0.00 |
| 20190108 23:05 | AD - Automated Deposit | 35291722 | | SBCC | ~sanchez solymiary,221 east dwight st,holyoke,MA,01040 | $20.00 | $0.00 | $0.00 | $0.00 |
| 20190114 11:18 | IC - Transfer from Inmate to Club A/c | 35311553 | | SBCC | ~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $0.50 | $0.00 | $0.00 |
| 20190114 11:19 | IC - Transfer from Inmate to Club A/c | 35311554 | | SBCC | ~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $0.50 | $0.00 | $0.00 |
| 20190114 11:20 | IC - Transfer from Inmate to Club A/c | 35311566 | | SBCC | ~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $0.50 | $0.00 | $0.00 |
| 20190114 11:25 | IC - Transfer from Inmate to Club A/c | 35311604 | | SBCC | ~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $0.50 | $0.00 | $0.00 |
| 20190114 11:28 | IC - Transfer from Inmate to Club A/c | 35311629 | | SBCC | ~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $0.71 | $0.00 | $0.00 |
| 20190114 11:32 | IC - Transfer from Inmate to Club A/c | 35311970 | | SBCC | ~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $0.50 | $0.00 | $0.00 |
| 20190115 13:44 | IS - Interest | 35323731 | | SBCC | | $0.01 | $0.00 | $0.00 | $0.00 |
| 20190117 14:55 | IC - Transfer from Inmate to Club A/c | 35345913 | | SBCC | ~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $0.50 | $0.00 | $0.00 |
| 20190118 09:00 | IC - Transfer from Inmate to Club A/c | 35350201 | | SBCC | ~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $3.00 | $0.00 | $0.00 |
| 20190121 23:05 | AD - Automated Deposit | 35355735 | | SBCC | ~kanuha angelica,906 chestnut st,waban,MA,02468 | $30.00 | $0.00 | $0.00 | $0.00 |
| 20190122 12:26 | IC - Transfer from Inmate to Club A/c | 35356630 | | SBCC | ~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $0.50 | $0.00 | $0.00 |
| 20190122 12:45 | IC - Transfer from Inmate to Club A/c | 35356656 | | SBCC | ~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $0.50 | $0.00 | $0.00 |
| | | | | | | $50.01 | $41.31 | $0.00 | $0.00 |

|  | Personal | Savings |
|---|---|---|
| Balance as of ending date : | $43.06 | $0.00 |

Current Balances :

| Personal | Savings | Freeze | Loan | Restitution | Sentence |
|---|---|---|---|---|---|
| $43.06 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |